Brett Weiss
The Weiss Law Group, LLC
8843 Greenbelt Road, Suite 299
Greenbelt, Maryland 20770
301-924-4400 Phone
240-627-4186 Fax
lawyer@brettweiss.com

*Counsel to the Debtor and Debtor in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| In re:<br><br>**META KARLISLE TOWNSEND,**<br><br>*Debtor.* | Case No. 21-10212 NVA<br><br>Chapter 11 |

### DEBTOR'S CHAPTER 11 PLAN DATED APRIL 14, 2022

**NOW COMES META KARLISLE TOWNSEND,** the Debtor and Debtor in Possession, by Counsel, and hereby submits to creditors this Chapter 11 Plan pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.,* and the Small Business Reorganization Act ("SBRA"), 11 U.S.C. §§ 1181 *et seq.* (the "Plan").

A detailed discussion of the Plan and its implementation is found herein. The Debtor urges creditors and parties in interest to consult with counsel. Creditors and parties in interest should not rely on any representations not contained in the Plan in evaluating the Plan.

### ARTICLE I – DEFINITIONS AND RULES OF CONSTRUCTION

The definitions and rules of construction set forth in 11 U.S.C. §§ 101 and 102 shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions:

1.1 ***"Administrative Bar Date"*** means the first Business Day thirty (30) days after the Confirmation Date and is the date by which all Administrative Claims must be

filed with the Bankruptcy Court, other than claims for counsel, accountants, and Subchapter V Trustee fees and costs, except as otherwise provided in the Plan.

1.2     **"Administrative Claim"** means any cost or expense of administration of the Estate allowed under § 503(b) of the Bankruptcy Code, proof (or request or motion for payment or approval) of which is timely filed by the Administrative Bar Date.

1.3     **"Allowed Claim"** means a Claim against the Debtor: (a) which is listed in the Debtor's Schedules (as amended), other than a Disputed Claim or a Claim to which an objection has been interposed; or (b) proof of which has been timely filed and with respect to which no timely filed objection to the allowance thereof has been interposed, or (c) which has been allowed by the Court in a Final Order, but only in the amount allowed. An Allowed Claim shall not include unmatured or post-petition interest unless otherwise stated in the Plan.

1.4     **"Assets"** means all property, real or personal, in which the Debtor have an interest.

1.5     **"Avoidance Actions"** means proceedings and causes of action of the Debtor under Chapter 5 of the Bankruptcy Code.

1.6     **"Bankruptcy Code"** or **"Code"** means Title 11 of the United States Code.

1.7     **"Bankruptcy Court"** or **"Court"** means the United States Bankruptcy Court for the District of Maryland, or, if such court ceases to exercise jurisdiction over the Case, the court or adjunct thereof that exercises jurisdiction over the Case.

1.8     **"Bankruptcy Rules"** or **"Rules"** means: (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the Bankruptcy Court, in either case, as now in effect or hereinafter amended (except that all time periods herein shall be calculated in accordance with the Bankruptcy Rules as in effect on the date hereof).

1.9     **"Bar Date"** means the date designated by the Bankruptcy Court as the last date for filing a proof of claim or proof of interest, as the case may be, against the Debtor. The Bar Date for the filing of pre-petition claims against the Debtor was March 23, 2021, with government claims due by July 12, 2021. The deadline for objections to dischargeability of certain debts was April 12, 2021.

1.10     **"Business Day"** means any day except Saturday, Sunday, or other day on which commercial banks in the State of Maryland are authorized or required by law to close, or any other "legal holiday" as defined in Bankruptcy Rule 9006(a).

1.11     ***"Case"*** means the case commenced by the Debtor under Chapter 11 of the Code pending in the Bankruptcy Court and bearing Case Number **21-10212 NVA.**

1.12     ***"Cash"*** means United States currency, drafts, checks, deposit accounts, or other cash equivalents.

1.13     ***"Claim"*** means a claim as defined in § 101(5) of the Code.

1.14     ***"Claimant"*** means a Person holding a Claim against the Debtor, or either of them.

1.15     ***"Class"*** means each class of Claims or Interests established and set forth in Article V of the Plan.

1.16     ***"Collateral"*** means any property or interest in property of the Debtor subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Code or applicable state law.

1.17     ***"Confirmation"*** means the entry of a Final Order of the Bankruptcy Court confirming the Plan.

1.18     ***"Confirmation Date"*** means the date on which the Confirmation Order is entered by the Bankruptcy Court.

1.19     ***"Confirmation Hearing"*** means the hearing under Code § 1128 scheduled by the Bankruptcy Court for consideration of Confirmation of the Plan, as it may be continued from time to time.

1.20     ***"Confirmation Order"*** means the order of the Bankruptcy Court confirming the Plan.

1.21     ***"Creditor"*** means the holder of a Claim.

1.22     ***"Days"*** shall be calculated in accordance with Rule 6 of the Federal Rules of Civil Procedure.

1.23     ***"Debtor"*** means **META KARLISLE TOWNSEND.**

1.24     ***"Disputed Claim"*** means a Claim:

(a)     which is listed as disputed or contingent in the Debtor's Schedules as filed or as amended; or

(b)    which is listed as disputed under any provision of this Plan, or

(c)    as to which a proof of claim was timely filed and an objection to such Claim was filed within 30 days after the Effective Date.

1.25    ***"Effective Date"*** means the date that is thirty (30) days after the Confirmation Order becomes a Final Order or April 25, 2022, whichever is later.

1.26    ***"Equipment"*** means all machinery, tools, motor vehicles, furniture and fixtures, and all parts thereof and all accessions thereto and all software related thereto, including software that is embedded in and is part of said Equipment, so as not to include any Inventory.

1.27    ***"Exempt Property"*** means property claimed as exempt on Schedule C (as amended, if applicable) filed by the Debtor, unless such exemption has been disallowed by the Bankruptcy Court upon timely objection.

1.28    ***"Estate"*** means the bankruptcy estate of the Debtor. The use of the term in the singular does not mean that the estates are substantively consolidated.

1.29    ***"Executory Contracts"*** means all contracts, including unexpired leases, to which the Debtor is or was a party on the Petition Date and which were executory within the meaning of § 365 of the Code and which may be assumed or rejected by the Debtor.

1.30    ***"Final Decree"*** means the Final Order of the Bankruptcy Court that closes the Case.

1.31    ***"Final Order"*** means an order or judgment of the Bankruptcy Court as entered on the docket in the case, that has not been reversed, stayed, modified, or amended, and as to which, either: (i) the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely filed, or (ii) any appeal or petition for certiorari that has been filed has been resolved by the highest court to which the order or judgment was appealed from or from which certiorari was sought.

1.32    ***"Inventory"*** means all goods held for sale or lease, including all raw materials, work in process, finished goods, and material used or consumed in the manufacture, production, preparation or shipping thereof, so as not to include any Equipment.

1.33    ***"Lien"*** has the meaning set forth in §101(37) of the Code.

1.34    ***"Material Default"*** of the Debtor shall occur if: (1) Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the

Plan, for more than 14 calendar days after the time specified in the Plan for such payment or other performance; (2) upon such failure, the affected creditor has served upon Debtor and Debtor's attorney a written notice of Debtor's default; and (3) Debtor fails within 30 calendar days after the date of receipt of the notice of default either: (i) to cure the default, or (ii) to obtain from the court or affected creditor an extension of time to cure the default, or a determination that no default occurred.

1.35    ***"Miscellaneous Assets"*** means Assets other than Real Property, Inventory, Equipment, Accounts Receivable, or Avoidance Actions.

1.36    ***"Person"*** means an individual, a corporation, an LLC, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a government or any political subdivision thereof, or other legal entity.

1.37    ***"Petition Date"*** means January 12, 2021, the date on which the voluntary petition for relief under the Code was filed by the Debtor.

1.38    ***"Plan"*** means this Plan, as it may be amended from time to time.

1.39    ***"Priority Claim"*** means a Claim made pursuant to § 507(a) of the Code, other than an Administrative Claim, a Professional Claim, or a Priority Tax Claim.

1.40    ***"Priority Tax Claim"*** means any Allowed Claim for taxes, including without limitation, income, property, withholding, payroll, or excise taxes, or any penalty related to the foregoing to the extent such Claim is entitled to priority under § 507(a)(8) of the Code.

1.41    ***"Professional"*** means any attorney, accountant, appraiser, consultant, financial advisor or other professional retained or to be compensated pursuant to an order of the Bankruptcy Court entered under any provision of the Code.

1.42    ***"Professional Claim"*** means any Claim for compensation or reimbursement of a Professional that will be paid through the Plan.

1.43    ***"Proof of Claim"*** means a proof of Claim filed pursuant to § 501 of the Code and Part III of the Bankruptcy Rules.

1.44    ***"Rejection Claim"*** means a Claim arising from the rejection of an executory contract or unexpired lease in such amounts as are permitted by the Code and applicable law, and as are allowed by the Bankruptcy Court.

1.45    ***"Schedules"*** means the schedules of assets and liabilities and Statement of Financial Affairs filed by the Debtor with the Bankruptcy Court and any amendments thereto.

1.46    ***"Secured Claim"*** means any Claim, debt, or demand against the Debtor as determined in accordance with § 506(a) of the Code that is secured by a properly perfected mortgage, deed of trust, Lien, pledge, or security interest in, or right of set off against, any Property of the Debtor, but only to the extent of the value of the Collateral as of the Confirmation Hearing or as otherwise expressly treated in the Plan.

1.47    "***Subchapter V Trustee"*** means Monique Desiree Almy, the appointed trustee under Code § 1183, or such successor trustee who is or shall be appointed.

1.48    ***"Unexpired Lease"*** means a lease of personalty or realty that had neither expired by its terms nor been properly terminated as of the Petition Date, and which has not expired by its terms or been rejected by a Final Order on or prior to the Confirmation Date.

1.49    ***"Unliquidated Claim"*** means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be estimated.

1.50    ***"Unsecured Claim"*** means any unsecured debt, demand, or Claim of whatever nature other than an Administrative Expense, a Professional Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim, to the extent as determined and allowed by the Bankruptcy Court in accordance with § 502 of the Code.

## ARTICLE II - SUMMARY OF PLAN AND CONFIRMATION REQUIREMENTS

### A.    *Repayment of Creditors*

The Plan provides for payment of administrative expenses, priority claims, and secured creditors in full or in part, either in cash or in deferred cash payments, and provides for payments to unsecured creditors in an amount greater than they would receive in the event of a Chapter 7 liquidation. Funds for implementation of the Plan will be derived from the Debtor's income from rental of real estate and income from consulting.

This document contains a detailed discussion of the Plan and its implementation. The Plan is a legal document and upon confirmation will become binding on the Parties. Creditors should read the Plan in its entirety, rather than relying on this summary. The Debtor urges creditors and other parties in interest to consult with independent counsel in connection with their analysis of the Plan.

**B.**     *Confirmation Requirements*

If all the applicable requirements of Code § 1129(a), other than paragraphs (8), (10), and (15) of that section, are met with respect to a Plan, the Court, on request of the Debtor, shall confirm the Plan notwithstanding the requirements of such paragraphs if the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan.

In order to be confirmed (i.e., approved) by the Court, the Plan or its proponent must (among other requirements set forth in Code §§ 1129 and 1191):

a.     Disclose all compensation paid or promised for professional services rendered or to be rendered in connection with the case;

b.     Disclose the identity and affiliations of all officers to serve after the Plan is confirmed and the compensation of any insiders to be employed after Confirmation;

c.     Propose to pay each member of an impaired class of Claimants who has not accepted the Plan property at least equal in value to what the Claimant would receive if the Debtors' assets were liquidated on the date of the Confirmation Hearing, and distributed to Creditors according to their rights and priorities under law;

d.     Propose to pay all Administrative Claims in full;

e.     Propose to pay all Priority Claims in full in deferred payments or cash;

f.     Propose to pay all Priority Tax Claims in full within five years after the order for relief in this case, in a manner not less favorable than the non-priority unsecured claims.

The Code requires that the Court hold a Confirmation Hearing with notice to all Creditors. The Confirmation Hearing is scheduled for May 24, 2022, at 2:00 p.m., before the Honorable Nancy V. Alquist, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Maryland, 101 W. Lombard Street, Baltimore, Maryland 21201. The Confirmation Hearing may be adjourned or continued by the Court without further notice except for an announcement made of the adjourned or continued date made at the Confirmation Hearing. The Court has made provisions for remote attendance at the Confirmation Hearing and all other hearings before the Court due to the COVID-19 pandemic. Further information about attending hearings remotely can be found at the Court's website, https://www.mdb.uscourts.gov/.

At the Confirmation Hearing, the Court shall determine whether the requirements of the Code have been satisfied, in which event the Court shall enter a Confirmation Order confirming the Plan. To confirm the Plan, either all classes of creditors must agree to accept the Plan (a "Consensual Plan"), or, in addition to the requirements stated *supra,* the Plan must not discriminate unfairly, and must be "fair and equitable".

A plan does not discriminate unfairly within the meaning of the Code if no Class receives more than it is legally entitled to receive for its Claims or Equity Interests. The Code establishes different "fair and equitable" standards for Secured and Unsecured Claims.

With respect to a Secured Claim, a plan may be "fair and equitable" if: (1) the impaired Secured Creditor retains its liens to the extent of its Allowed Claim and receives deferred cash payments at least equal to the allowed amount of its Claim with a present value as of the Effective Date at least equal to the value of such Creditor's interest in the property securing its liens; (2) property subject to the lien of the impaired Secured Creditor is sold free and clear of that lien, with that lien attaching to the proceeds of sale, and such lien proceeds must be treated in accordance with clauses (1) and (3) hereof, or (3) the impaired Secured Creditor realizes the "indubitable equivalent" of its Claim under the plan.

Additionally, as to all claims, to be fair and equitable, the Plan must provide that, as of the Effective Date of the Plan, all of the Debtor's projected disposable income to be received in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date that the first payment is due under the Plan, will be applied to make payments under the Plan; or the value of the property to be distributed under the Plan in such period is not less than the projected disposable income of the Debtor.

"Projected Disposable Income" is defined as the income that is received by the Debtor and that is not reasonably necessary to be expended for the maintenance or support of the Debtor or a dependent of the Debtor, a domestic support obligation that first becomes payable after the date of the filing of the petition, or the payment of expenditures necessary for the continuation, preservation, or operation of the business of the Debtor.

The Debtor must show that she can make all payments under the Plan, or that there is a reasonable likelihood that the Debtor will be able to make all payments under the Plan and the Plan provides appropriate remedies to protect the holders of claims or interests if payments are not made.

## ARTICLE III - REQUISITE DISCLOSURES

A.       ***Representations Limited***

THE WEISS LAW
GROUP, LLC
8843 GREENBELT RD. #299
GREENBELT, MD 20770
(301) 924–4400

NO REPRESENTATIONS CONCERNING THE DEBTOR, PARTICULARLY REGARDING FUTURE BUSINESS OPERATIONS OR THE VALUE OF THE DEBTOR'S ASSETS, HAVE BEEN AUTHORIZED BY THE DEBTOR EXCEPT AS SET FORTH IN THIS STATEMENT. YOU SHOULD NOT RELY ON ANY OTHER REPRESENTATIONS OR INDUCEMENTS PROFFERED TO YOU TO SECURE YOUR ACCEPTANCE OR REJECTION IN ARRIVING AT YOUR DECISION IN VOTING ON THE PLAN. ANY PERSON MAKING REPRESENTATIONS OR INDUCEMENTS CONCERNING ACCEPTANCE OR REJECTION OF THE PLAN SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR AT THE ADDRESS BELOW. FOR VARIOUS REASONS, THE RECORDS OF THE DEBTOR PRIOR TO PREPARATION OF THIS PLAN MAY NOT HAVE BEEN COMPLETE AND THE ACCURACY OF THE INFORMATION SUBMITTED WITH THIS STATEMENT IS DEPENDENT ON INFORMATION AVAILABLE TO THE DEBTOR WITH THE ASSISTANCE OF COUNSEL. WHILE REASONABLE EFFORTS HAVE BEEN MADE TO PROVIDE THE MOST ACCURATE INFORMATION AVAILABLE, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT ALL INFORMATION IS WITHOUT INACCURACY. THERE ARE NO KNOWN INACCURACIES. WHILE REASONABLE EFFORTS HAVE BEEN MADE TO ENSURE THAT THE ASSUMPTIONS ARE VALID AND AS ACCURATE AS CAN BE MADE UNDER THE CIRCUMSTANCES, NEITHER THE DEBTOR NOR THE DEBTOR'S ATTORNEYS UNDERTAKE TO CERTIFY OR WARRANT THE ABSOLUTE ACCURACY OF THE ASSUMPTIONS OR PROJECTIONS.

NO FORMAL APPRAISALS HAVE BEEN UNDERTAKEN OF THE DEBTOR'S PROPERTY EXCEPT WHERE STATED. THE VALUES PLACED THEREON AND SUMMARIZED BELOW ARE THE DEBTOR'S BEST ESTIMATE OF THE VALUE OF THE PROPERTY AS OF THE TIME OF THE FILING OF THE PLAN AND THIS DISCLOSURE STATEMENT. THESE VALUES MAY DIFFER FROM VALUES PLACED ON THE SAME PROPERTY AT THE TIME OF FILING OF THE PETITION FOR RELIEF AND THE SUBSEQUENT SCHEDULES.

B.   ***Brief History of Business Operations of the Debtor***

The Debtor, Dr. Meta K. Townsend, is a 62-year-old individual Maryland resident. She has two B.A. degrees from the University of Maryland, Baltimore County, two Masters degrees from UCLA and George Washington University, and a Ph.D. from George Washington University, She formerly worked as a Foreign Affairs Analyst in the Middle Eastern Terrorist division for the U.S. Department of State.

For the past 15 years, Dr. Townsend has been the Chief Executive Officer of Home Sweet Home DD Inc., overseeing the operations of the residential, day habilitation, and vocation services programs for adults diagnosed with developmental disabilities. She has

also served as the Executive Director of Home Sweet Home Inc., at Severna Park, overseeing its Assisted Living Programs from 1998 to the present.

C.     ***Events Leading to Bankruptcy***

One of Dr. Townsend's businesses, Home Sweet Home DD Inc. ("HSHDD"), also a debtor in a related case, had successfully operated residential, day habilitation, and vocation services programs for adults diagnosed with developmental disabilities for about 15 years. Unfortunately, and unjustly from the Debtor's perspective, HSHDD's provider license was revoked. This unhappy set of circumstances was coupled with the adverse effects of COVID-19, leading to additional restrictions on in-person services and support and ultimately closure for long term care programs. HSHDD leased two of Dr. Townsend's properties.

When foreclosure notices were filed, it became apparent that Dr. Townsend would be unable to continue without substantial loss. As a result, the Debtor filed for bankruptcy relief under Subchapter V of Chapter 11.

D.     ***Procedural Posture of the Bankruptcy Case***

On January 12, 2021 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for reorganization relief under SBRA provisions of Chapter 11 of title 11 of the U.S. Code. The Debtor continues to hold the assets of the estate as Debtor-in-Possession pursuant to Code §§ 1107(a) and 1108. Monique D. Almy was appointed the Subchapter V Trustee herein.

Due to the Debtor's serious illness and hospitalization, the time for filing the Chapter 11 Plan was extended from March 15, 2021 to July 11, 2021. A Chapter 11 Plan was filed on July 12, 2021, with a confirmation hearing set for October 26, 2021. That hearing was continued to January 11, 2022 to allow time for licensing issues to be resolved in connection with leases and a proposed contract between Home Sweet Home DD, Inc. and METS, LLC with Genesys Support Services, Inc. Unfortunately, after Genesys failed tto receive the license in a timely manner,[1] a new agreement was reached with Harbor East, LLC, under substantially the same terms as with Genesys. An Amended Plan was filed on January 12, 2022, and the within Amended Plan was filed after plan treatment was agreed to with several secured creditors. Motions to approve the leases and contract with Harbor East are pending. One unsecured claim was objected to, which objection has been sustained. One Motion for Relief from the Automatic Stay has been filed, which has been continued a number of times and is expected to be resolved via a Consent Order. Rule 2004 Examinations of Dr. Townsend and the principal of Genesys Support Services were conducted by Myson Holding Company, LLC.

---

[1] The license is believed to have been issued in February 2022.

THE WEISS LAW
GROUP, LLC
8843 GREENBELT RD. #299
GREENBELT, MD 20770
(301) 924–4400

– 10 –

E.    *Assets*

The Debtor's principal assets are three parcels of improved real estate and a small parcel of raw land inherited from her father, an eight-year-old motor vehicle, household goods, electronics, sporting equipment, clothing, and jewelry of nominal value, and a small amount of cash and money in the bank. She is also the owner of seven corporate entities, two of which (METS, LLC and Home Sweet Home DD, Inc.) filed for relief under the SBRA provisions of Chapter 11 the same date of the Debtor. She also has a fully exempt retirement account and an uncollectible judgment for rent. As indicated in the Chapter 7 Liquidation Analysis found in Section IV, it is estimated that, were the Debtor's case filed under Chapter 7, there would be nothing in the Debtor's estate available for distribution to general unsecured creditors after the payment of liens, exemptions, trustee fees, costs, and commissions, and the cost of liquidation. The Debtor, after a good-faith analysis of any such potential claims, does not intend to pursue any preference, fraudulent conveyance, or other avoidance actions.

F.    *Creditors Committee/Trustee*

As an SBRA case, there is no appointment of a Committee of Creditors pursuant to Code § 1102(a)(3). Monique D. Almy has been appointed as the Subchapter V Trustee pursuant to Code § 1183. No other trustee or examiner has been appointed.

G.    *Professionals*

The Debtor has retained the firm of The Weiss Law Group, LLC and Brett Weiss, which appointment has been approved by the Court at Docket No. 39. The Debtor has also retained as accountants the firm DCC Accounting Services, Inc. and Richard N. Coleman, CPA, which appointment has been approved by the Court at Docket No. 41.

On or about May 27, 2020, the Debtor paid The Weiss Law Group, LLC into escrow a retainer in the amount of $5,000.00, and an additional retainer of $11,595.33 plus the $1,738.00 filing fee were paid on January 12, 2021 prior to filing. The Weiss Law Group, LLC currently holds a retainer in escrow in the amount of $16,595.33.

The Weiss Law Group, LLC expects to shortly file a fee application for approximately a total of $50,000.00, which is subject to Court approval under Code § 330.

Monique D. Almy was appointed as the Subchapter V Trustee. It is estimated that her total fees and costs are approximately $25,000.00, which are subject to Court approval under Code § 330.

The Debtor has retained DCC Accounting Services, Inc. and Richard N. Coleman, CPA as accountant for the estate, which appointment has been approved by the Court. Mr.

Coleman expects to file shortly a fee application for approximately $5,000.00, which fee and costs are subject to Court approval under Code § 330.

H.    ***Officers/Directors and Compensation***

As an individual debtor, the requirement to disclose the Debtor's officers and directors is inapplicable.

## ARTICLE IV – ANALYSIS OF LIQUIDATION VALUE OF THE ESTATE

As indicated in the Chapter 7 Liquidation Analysis Worksheet attached hereto as Exhibit A, there are estimated to be no assets that a Chapter 7 Trustee would administer, leaving no funds available to make any distributions to General Unsecured Creditors. The proposed Plan pays the general unsecured class $10,000.00*, pro rata,* a distribution of approximately 1%. There are no avoidable prepetition transfers.

As such, after payment of priority and administrative claims, the distribution to unsecured creditors in a Chapter 7 liquidation would be lower than under this Plan.

## ARTICLE V – CLASSIFICATION AND TREATMENT OF CLAIMS

The Plan establishes nine classes of claims, plus two categories of unclassified claims (for administrative expenses and priority taxes). The classes of claims are identified and treated as follows:

A.    ***Unclassified Claims***

1.    *Administrative Expenses.* Pursuant to Code § 1191(e), Administrative Expense claims approved and allowed by the Court shall be paid in full in quarterly installments over the 60 months after the Effective Date of the Plan, beginning 30 days after the Effective Date or as soon thereafter as the amount thereof can be fixed, unless a different treatment is agreed to or provided for in this Plan. Administrative claims that by their terms are not due and payable on or before the Effective Date shall be paid over the remaining portion of that time period. Administrative claims where all or a portion of awarded fees are being held by counsel in escrow may be paid upon allowance by the Court to the extent of such escrowed sums, with any balance to be paid as provided above.

The total unpaid professional fees to Debtor's counsel as of the date of this Plan are estimated to be approximately $50,000.00, partially covered by the prepetition retainer, although additional fees will be incurred before the Effective Date. The Subchapter V Trustee's fees are estimated at approximately $25,000.00. The Debtor's accountant fees are estimated at approximately $5,000.00. The Debtor is unaware of any other unpaid administrative expense claims.

B.    *Priority Taxes*.

1.    The Internal Revenue Service filed a priority claim (Claim No. 3) in the amount of $36,955.95. This claim shall be paid in full, without interest as provided for by the Proof of Claim, in equal quarterly cash payments up through the five-year anniversary of the Petition date, commencing 30 days after the Effective Date of the Plan, unless a different treatment is agreed to or provided for in the Plan.

2.    The State of Maryland filed a priority claim (Claim No. 10) in the amount of $683.00. This claim shall be paid in full, without interest as provided for by the Proof of Claim, in equal quarterly cash payments up through the five-year anniversary of the Petition date, commencing 30 days after the Effective Date of the Plan, unless a different treatment is agreed to or provided for in the Plan.

3.    The State of Maryland filed a second priority claim (Claim No. 20) in the amount of $11,685.00. This claim shall be paid in full, without interest as provided for by the Proof of Claim, in equal quarterly cash payments up through the five-year anniversary of the Petition date, commencing 30 days after the Effective Date of the Plan, unless a different treatment is agreed to or provided for in the Plan.

### Classified Claims and Interests

A.    *Class A (Priority (non-tax) Claims)*: Class A consists of Priority Claims under 11 U.S.C. § 507 other than Administrative Claims and Priority Tax Claims. The Debtor is unaware of any such claims, and no proofs of claim in this class have been filed. In the unlikely event that there are any allowed claims in Class A, they shall be paid in full, in cash, by the Debtor on the Effective Date of the Plan or as soon thereafter as the amount thereof can be fixed, unless a different treatment is agreed to or provided for in this Plan.

B.    *Class B-1 (NewRez LLC d/b/a Shellpoint Mortgage Servicing secured claim)*. This Class consists of the secured prepetition claim of Creditor for a Deed of Trust secured by a lien on the Debtor's improved real property at the Property at 108 West Earleigh Heights Road, Severna Park, Maryland 21146 in the pre-petition approximate amount of $247,888.02 (Claim No. 2-1). By agreement, Creditor shall retain its lien and this claim shall be repaid pursuant to the written agreement between the Debtor and Creditor. The agreement's material terms require repayment of the principal amount of $268,154.55, at an annual interest rate of 4.250%, in 360 equal monthly installments of $1,210.74, beginning June 1, 2022 and continuing until maturity of July 1, 2058. In addition, the Debtor shall tender $1,171.06 to Creditor on or before May 2, 2022, for the repayment of certain escrow advances. The Debtor shall pay all future real estate taxes and property insurance directly. Creditor reserves the right to advance for taxes or insurance upon the Debtor's default. This Class is impaired.

C.      *Class B-2 (US Bank National Association/CENLAR secured claim).* This Class consists of the secured prepetition claim of US Bank National Association (Claim No. 4) for a mortgage/deed of trust secured by a lien on the Debtor's improved real property at 136 Clarence Avenue, Severna Park, Maryland 21146 in the approximate amount of $136,165.58. This property is the Debtor's residence. The holder of the Class B-2 secured claim shall retain its lien and this claim shall be paid all pre- and post-petition arrearages (approximately $34,714.96), without interest, in monthly payments of $79.73. Any unpaid sums shall be due in full on the existing maturity date of the loan. Such payments shall begin on the first day of the first month following the Effective Date. The Debtor shall resume post-Effective Date monthly mortgage payments on the first day of the first month following the Effective Date.

D.      *Class B-3 (Samuel Mogavero secured claim).* This Class consists of the secured prepetition claim of Samuel Mogavero (Claim No. 5) for a judgment on the Debtor's improved real property, in the approximate amount, as of May 10, 2022, of $258,070.32, consisting of the principal amount of the judgment in the amount of $221,428.45, and post-judgment interest in the amount of $36,641.87. Interest continues to accrue at the statutory rate of 10 percent.

By agreement, the Class B-3 claim shall be paid as follows: Commencing on May 10, 2022, and continuing on the 10th of each month thereafter until paid in full, the Debtor shall commence payments in the amount of $2,136.83 each month, to be credited to principal and interest based on a 20-year amortization of the principal amount of the judgment at the statutory rate of interest. Payment of the $36,641.87 of interest that has accrued from the date of the judgment through May 10, 2022 ("B-3 Deferred Amount") shall be deferred until final payment of the Class B-3 claim. On or before the fifth anniversary of the Confirmation Date, the Debtor shall pay the Class B-3 claim in full, including the principal and current interest then due and the B-3 Deferred Amount. The lien of the judgment shall continue to secure the obligations under this plan until the Class B-3 claim is paid in full.

Additionally, the Debtor shall (a) timely pay (i) all loans secured by the Debtor's improved real property and (ii) all real estate taxes and other obligations which may become a lien on the Debtor's improved real property senior to Myson's lien; and (b) maintain insurance on the Debtor's improved real property sufficient to cover the full value of all structures on the Property, with Mr. Mogavero designated as an additional loss payee with mortgagee clause ("Samuel Mogavero") on such policy(ies). The Debtor shall send to Mr. Mogavero proof of payment of (i) real estate taxes and other senior liens and (ii) property insurance premiums within 5 business days of such payment.

<u>Mechanics of payment</u>.  Each month, the Debtor shall deliver to Mr. Mogavero a check in the amount of the monthly payment due to Mr. Mogavero pursuant to this plan.

THE WEISS LAW
GROUP, LLC
8843 GREENBELT RD. #299
GREENBELT, MD 20770
(301) 924-4400

– 14 –

Payments must be made by cashier's check, certified check or other bank funds, and must be delivered so as to be received by Mr. Mogavero at 1552 Fairview Beach Road, Pasadena, Maryland 21122, on or before the 10th of the month.

Default in payment.  In the event the Debtor does not timely make any of the payments required by this Plan: (1) on the first such event in any period of 12 months, Mr. Mogavero shall provide the Debtor written notice that the payment was not received by mailing a copy of such notice to the Debtor at 136 Clarence Avenue, Severna Park, Maryland 21146, and simultaneously emailing a copy of such notice to Brett Weiss, Esquire at  brett@BankruptcyLawMaryland.com, and the Debtor shall have ten (10) days from the date the notice is sent to cure the default in payment; (2) if the first default within a 12-month period is not cured within the ten-day grace period or with respect to any subsequent defaults by the Debtor to timely make payments stated in this Plan, Mr. Mogavero may file with the Court a notice (the "Stay Termination Notice") that the Class B-3 claim has not been paid in accordance with the Plan, and that 10 days from the date of the filing of the Stay Termination Notice the Court shall issue an order indicating that the automatic stay of 11 U.S.C. § 362(a) is modified to permit the holder(s) of the Class B-3 claim to exercise all rights and remedies under applicable law to foreclose the Debtor's interest in the Debtor's improved real property.  Absent any objection, 10 days after filing of the Stay Termination Notice, the Court shall issue an order (the "Stay Termination Order") modifying the automatic stay of 11 U.S.C. § 362(a) to permit the holder of the Class B-3 claim to exercise all rights and remedies under the loan documents and applicable law to foreclose the Debtor's interest in the Debtor's improved real property. With respect to any objection to the Stay Termination Notice that may be filed, the Debtor and the holder of the Class B-3 claim intend that the monthly payments required hereunder will be made timely and without interruption, and that an objection seeking to modify that course of conduct is not a valid objection. To remove all doubt, the holder of Class B-3 claim shall not be required by this Plan or by the Court to file anything more that the Stay Termination Notice to cause the issuance of the Stay Termination Order. A Proposed Stay Termination Notice is appended to this Plan as Exhibit B.

Closure of Case.  For purposes of Rule 3022 of the Federal Rules of Bankruptcy Procedure, the estate of the Debtor shall not be considered fully administered nor shall the Court enter a final decree closing this Chapter 11 case until all claims of Samuel Mogavero have been paid in full.

The provisions of ¶ 1.34 do not apply to this class.

This class is impaired.

E.     *Class B-4 (Colonial National Mortgage secured claim)*: This Class consists of the secured prepetition claim of Colonial National Mortgage (Claim No. 11) for a

mortgage/deed of trust secured by a lien on the Debtor's improved real property at 138 Clarence Avenue, Severna Park, Maryland 21146 in the approximate amount of $262,245.35. Post-petition arrearages, excluding escrows, are estimated to be approximately $11,918.32 (through September 1, 2021). The holder of the Class B-4 secured claim shall retain its lien and this claim shall be paid in 360 equal monthly installments of $1,348.72 ($274,163.67 amortized over 30 years at 4.25% *Till* interest *per annum*). Debtor shall receive a credit for any adequate protection payments made as of the Effective Date of the Plan. Payments as provided for herein shall begin on the first day of the first month following the Effective Date. The default provisions of the existing loan documents, rather than the provisions of ¶ 1.34 herein, shall apply to this Class, with the addition that, upon such default, the affected creditor shall serve upon Debtor and Debtor's attorney a written notice of Debtor's default. This class is impaired.

F.      *Class B-5 (Bay Country Consumer Finance, Inc. secured claim)*: This Class consists of the secured prepetition claim of Bay Country Consumer Finance (Claim No. 19) for a vehicle loan secured by a title lien on the Debtor's 2003 GMAC Yukon and 2008 Acura TL in the approximate amount of $7,167.52. The holder of the Class B-5 secured claim shall retain its lien and this claim shall be paid in 60 equal monthly installments of $132.81 ($7,167.52 amortized over 60 months at 4.25% *Till* interest *per annum*). Debtor shall receive a credit for any adequate protection payments made as of the Effective Date of the Plan. Payments as provided for herein shall begin on the first day of the first month following the Effective Date. This class is impaired.

G.      *Class B-6 (Anne Arundel County secured claim)*: This class consists of the secured prepetition claim of Anne Arundel County, Maryland (Claim No. 21), filed in the amount of $5,867.03 as of the petition date, secured by a secured by a statutory lien against the Debtor's improved real property. This claim shall be paid in full, with statutory interest at 12% *per annum,* in 60 monthly payments of $130.51, beginning thirty days after the Effective Date of the Plan. Any sums due but unpaid as of the 59th month following the Commencement Date of this case shall be due in full at such time, so that Plan payments do not extend beyond the five-year period established by Code § 1192. This class is impaired.

H.      *Class B-7 (City of Dillon, SC secured claim):* This Class consists of the secured prepetition claim of the City of Dillon, SC (no Proof of Claim filed) for property taxes on raw land in Dillon, South Carolina in the approximate amount of $374.88. This claim will be paid in full, with interest, on the Effective Date. This Class is not impaired.

I.      *Class C-1 (General Unsecured Claims).* Class C-1 consists of all general unsecured claims against the Debtor, including any unsecured portion of Class B-1. Holders of Class C-1 claims shall be paid, *pro rata,* a total of $10,000.00 in 20 quarterly payments of $500.00. The proposed total distributions to each member of this Class are as follows:

THE WEISS LAW
GROUP, LLC
8843 GREENBELT RD. #299
GREENBELT, MD 20770
(301) 924–4400

| Creditor | Claim | Claim Amount | % Share | Distribution |
|----------|-------|--------------|---------|--------------|
| IRS | 3 | $ 34,987.08 | 1.87% | $ 186.60 |
| Verizon | 6 | $ 1,065.17 | 0.06% | $ 5.40 |
| Verizon | 7 | $ 728.76 | 0.04% | $ 3.60 |
| Verizon | 8 | $ 121.98 | 0.01% | $ 0.60 |
| BB&T/Truist | 9 | $ 1,402.00 | 0.07% | $ 7.20 |
| Maryland 1 | 10 | $ 54.00 | 0.00% | $ 0.01 |
| Verizon | 12 | $ 158.31 | 0.01% | $ 3.60 |
| Myson 1[2] | 13 | $ 325,280.50 | 17.38% | $ 1,737.60 |
| Myson 2 | 14 | $ 412,117.82 | 22.01% | $ 2,201.40 |
| Myson 3 | 15 | $ 360,274.08 | 19.25% | $ 1,924.80 |
| Myson 4 | 16 | $ 174,917.39 | 9.34% | $ 934.20 |
| Myson 5 | 17 | $ 193,005.10 | 10.31% | $ 1,030.80 |
| Myson 6 | 18 | $ 187,475.50 | 10.01% | $ 1,001.40 |
| Maryland 2 | 20 | $ 572.00 | 0.03% | $ 3.00 |
| Apex Financial Services | - | $ 9,500.00 | 0.51% | $ 51.00 |
| Fedloan Servicing | - | $ 170,342.31 | 9.10% | $ 910.19 |
| | | | | |
| Total Plan Payments | | $ 1,872,002.00 | 100.00% | $10,000.00 |

The first such payment shall be made thirty (30) days after the Effective Date of the Plan, with subsequent payments being made every three months thereafter until the total sum due has been paid. Any sums due but unpaid as of the 59th month following the Commencement Date of this case shall be due in full at such time, so that Plan payments do not extend beyond the five-year period established by Code § 1192. This class is impaired.

      J.    *As to All Claims.* The right to object to all claims is reserved. The payment on any claims which are then subject to objections as to which a Final Order has not been entered shall be deposited in the undersigned counsel's attorney trust account (or an interest-bearing account if over $10,000) until a Final Order is entered, and shall be paid to the creditor, distributed to the holders of other allowed claims, or refunded to the Debtor, as appropriate, upon entry of such a Final Order.

## ARTICLE VI - IMPLEMENTATION OF PLAN

---

[2] The claims of Myson Holding Company, LLC (Proofs of Claim 13, 14, 15, 16, 17, and 18) are for loan guarantees given by the Debtor for mortgage loans made to METS, LLC and Home Sweet Home DD, Inc. and which are secured by properties titled solely in the name(s) of those entities. Both METS and Home Sweet Home DD are currently in pending Chapter 11 cases, Nos. 21-10214 and 21-10213 respectively. The pending Chapter 11 Plans in each of their cases provide for the payment in full of each of the loans which is guaranteed (reamortized over the current loan term at *Till* interest), other than that for 104 Ken-Mar Avenue, Pasadena, Maryland 21122 in the METS case, in which the loan is stripped down to the current value of that property.

THE WEISS LAW
GROUP, LLC
8843 GREENBELT RD. #299
GREENBELT, MD 20770
(301) 924-4400

A.    Funds for implementation of the Plan will be derived from the Debtor's income from rentals and consulting.

Although the Debtor's MORs have shown negligible income since filing, the Debtor has entered into two lease agreements with Home Sweet Home, Inc. at Severna Park,[3] a corporate entity owned solely by the Debtor, for the rental of two of the Debtor's real properties for assisted living facilities. The rental agreements are triple net, and provide for payments as follows:

- *138 Clarence Avenue.* $1,883.36/month, five-year lease term. This property is licensed for 5 residents.

- *108 W. Earleigh Heights.* $1,440.31/month, five-year lease term. This property is licensed for 4 residents.

Copies of the leases are attached as Exhibit B. It is anticipated that residents in these properties, through Home Sweet Home, Inc., will be private pay, rather than state pay (although there is certification for state pay). Three previous agreements for rentals terminated upon the deaths of the proposed residents. Home Sweet Home, Inc. is taking additional steps to obtain residents such that rent payments under these leases can begin in March 2022.

These leases will provide total monthly income to the Debtor of $3,323.67. The monthly payments called for under the Plan total $5,963.58, and the regular monthly expenses as shown on Schedule J total $4,643.87. Debtor also will be receiving $10,000.00 per month in salary from Home Sweet Home DD, Inc. for services she will be providing pursuant to the Consulting Contract between Home Sweet Home DD, Inc. and Harbor East Group.

B.    If the Debtor is unable for any reason to make the payments required by this Plan, Debtor may sell or refinance one or more of the properties listed in subparagraph A above, satisfying the applicable Class B claim(s) secured by such property(ies) in full therefrom, and shall apply the net proceeds to any missed payments due under the Plan, and then to unpaid administrative expenses, and Class C-1, and any unpaid Class B claims until paid in full, in that order.

Pursuant to Code § 1146(a), the making or delivery of any deed, deed of trust or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, deeds of trust, bills of assignments, deeds-in-lieu of foreclosure executed in connection with any of the transactions contemplated under the

---

[3] This is a different entity from Home Sweet DD, Inc., which is currently in a pending Chapter 11 bankruptcy.

Plan (including but not limited to the foregoing sale(s)), including but not limited to the private sale or public auction of the Property shall not be subject to any stamp tax, transfer or other similar tax. The appropriate state or local government officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment pursuant to Code § 1146(a).

C.      The Debtor shall retain the Assets of the estate (except as otherwise provided in this Plan) and shall therewith operate her business and personal affairs and pay ordinary living and business expenses while paying creditors the amounts set forth in this Plan. Consistent with the provisions of this Plan and subject to any releases provided for herein, the Debtor reserves the right to begin or continue any adversary proceeding permitted under the Code and Rules to collect any debts, or to pursue its claims in any court of competent jurisdiction. Except as expressly provided for in this Plan, nothing in this Plan shall be deemed to constitute a waiver of any claim that the Debtor may assert against any other party, including the holder of any claim provided for in this Plan, and the allowance of any claim against the Debtor or the estate shall not bar any claim by the Debtor against the holder of such claim.

## ARTICLE VII – EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Any prepetition Executory Contracts and Leases in effect as of the Effective Date and not specifically rejected, assumed, or assumed and assigned will be deemed rejected as of the Effective Date. Any Claims arising from the rejection of Contracts and Leases must be filed on or before the Rejection Claim Bar Date. The Rejection Claim Bar Date is 30 days after the Effective Date, or, if later, 30 days after entry of any Final Order rejecting the Executory Contract or Lease. Absent the filing of a proof of claim on or before the Rejection Claim Bar Date, all Rejection Claims shall be forever barred from assertion and shall not be enforceable against the Debtor, or the Debtor's Estate, Assets, or properties. All Rejection Claims shall be Class C-1 General Unsecured Claims.

## ARTICLE VIII – RETENTION OF JURISDICTION

Following the Confirmation Date, the Court shall retain jurisdiction over the Debtor and the Debtor's operations for the following purposes until the Court enters an Order closing the case:

A.      To rule on the allowance or classification of claims and to hear any objections thereto. The failure of the Debtor to object to, or to examine any claim for the purposes of voting shall not be deemed a waiver of the Debtor's right to object to such claim in whole or in part;

B.      To hear and determine all adversary proceedings and contested matters;

THE WEISS LAW
GROUP, LLC
8843 GREENBELT RD. #299
GREENBELT, MD 20770
(301) 924–4400

C.      To allow and approve or disapprove any administrative expenses not previously allowed;

D.      To determine and resolve questions concerning the existence of defaults under the Plan;

E.      To modify the Plan pursuant to Code § 1193;

F.      To correct any defect, to cure any omission, to reconcile any inconsistency in the Plan or Order of Confirmation as may be necessary to carry out the purposes and intent of the Plan; and

G.      To issue any Order necessary to carry out the Plan.

Notwithstanding the foregoing, the Confirmation Order shall entitle the Debtor to manage the Debtor's financial affairs, including the sale, disposition, or lease of assets, without further Order of the Court, and shall permit the Debtor, in the Debtor's discretion, to obtain new and additional credit and/or loans from any source, which credit or loans may be secured by the Debtor's assets, without further Order of the Court.

## ARTICLE IX – MODIFICATION OR WITHDRAWALS OF PLAN

The Debtor may alter, amend, or modify the Plan under Code § 1193 at any time before the Confirmation Date, so long as the Plan, as modified, meets the requirements of Code §§ 1122 and 1123, with the exception of subsection (a)(8) of § 1123. Following the Confirmation Date but before the Effective Date, the Debtor may also alter, amend, or modify the Plan under Code § 1193. The Debtor may revoke or withdraw the Plan before the Confirmation Date. If the Plan is revoked or withdrawn before the Confirmation Date, the Plan shall be of no force or effect, and shall be deemed null and void. If the Plan is revoked or withdrawn before the Confirmation Date, nothing contained herein shall in any way effect or prejudice the rights of the Debtor with regard to Claims, Avoidance Actions, or any other rights or interests. After confirmation, the plan may be modified pursuant to Code § 1193.

## ARTICLE X – MISCELLANEOUS PLAN PROVISIONS

Payments issued to persons holding allowed claims shall be mailed to the address of the creditor on the proof of claim (or, if allowed pursuant to the schedules, to the address on the schedules), unless the creditor files a change of address notice with the Court. Any payment mailed to said address and returned by the post office as undeliverable, or not deposited within 180 days, shall be void and the funds may be retained by the Debtor, and the holder of the allowed claim shall have no further claim to such funds. The Debtor shall

not make further payments to the holder of an allowed claim whose prior payment has been retained by the Debtor as provided for under this paragraph.

No distribution shall be made on any claim until the cumulative distribution on that claim equals at least $20.00, except that the final distribution to any class shall distribute all remaining funds due to each creditor without regard to amount.

Pursuant to Code §§ 105(a) and 1142, the Plan provides for the Court to retain exclusive jurisdiction over all matters relating to the Plan, including the allowance of Claims and the adjudication of any Avoidance Actions.

After the Effective Date, and so long as the Case shall remain open, the Debtor shall provide the United States Trustee with post-confirmation quarterly reports that shall include all of its disbursements for that quarter.

The Debtor shall act as disbursing agent to make the required distributions under the Plan.

No creditor may take any collection action against Debtor or property of the estate so long as Debtor is not in Material Default in performing the Debtor's obligations to such creditor under the Plan.

On the Effective Date, all property of the estate will vest in the reorganized Debtor pursuant to Code § 1141(b) free and clear of all claims and interests except as specifically provided in this Plan.

Except as specifically provided in this Plan, the obligations to creditors that Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under state law. To the extent a creditor retains a lien under the Plan, except as provided in this Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

Date: April 14, 2022                    Respectfully Submitted,


                                       THE WEISS LAW GROUP, LLC


                                       By: _____/s/ Brett Weiss_____
                                           BRETT WEISS

## CERTIFICATE OF SERVICE

THE WEISS LAW
GROUP, LLC
8843 GREENBELT RD. #299
GREENBELT, MD 20770
(301) 924–4400

𝕴 𝖍𝖊𝖗𝖊𝖇𝖞 𝖈𝖊𝖗𝖙𝖎𝖋𝖞 that on the 14th day of April, 2022, I reviewed the Court's CM/ECF system and it reports that an electronic copy of the above pleading will be served electronically by the Court's CM/ECF system on the following:

Monique Desiree Almy     malmy@crowell.com
Nikita Rajendra Joshi     Nikita.Joshi@bww-law.com
Katherine A. (UST) Levin     Katherine.A.Levin@usdoj.gov
James C. Olson     jolson@jamesolsonattorney.com
Hunter C. Piel     hpiel@piellawfirm.com
US Trustee - Baltimore     USTPRegion04.BA.ECF@USDOJ.GOV

𝕴 𝖍𝖊𝖗𝖊𝖇𝖞 𝖋𝖚𝖗𝖙𝖍𝖊𝖗 𝖈𝖊𝖗𝖙𝖎𝖋𝖞 that on the 14th day of April, 2022, a copy of the above pleading was also mailed first class mail, postage prepaid, to:

20 Largest Unsecured Creditors:

Apex Financial Services, LLC
2 Reservoir Circle #100
Pikesville, MD 21208

Bay Country Consumer Finance
6619 Ritchie Hwy Ste 13
Glen Burnie, MD 21061-6401

Brumwells Instant Heating & AC Inc.
3915 Mountain Road
Pasadena, MD 21122

CEP America, LLC
2100 Powell Street, Suite 920
Emeryville, CA 94608

CreditOne Bank
PO Box 98873
Las Vegas, NV 89193

Fedloan Servicing
PO Box 69184

Harrisburg, PA 17106

Hertz
8501 Williams Road
Estero, FL 33928

Internal Revenue Service
Centralized Insolvency Operation
PO Box 7346
Philadelphia, PA 19101-7346

MTA Bridges & Tunnels
Park 1
New York, NY 10035

Maryland Transportation Authority
2310 Broening Highway
Baltimore, MD 21224

Severna Park Veterinary Hospital
4 Evergreen Road
Severna Park, MD 21146

State of Maryland
301 West Preston Street, Room 409
Baltimore, MD 21201

Truist Bank
214 N. Tryon Street
Charlotte, NC 28202

UM Baltimore Washington Heart Assc
Dr. Jorge Ramirez
7845 Oakwood Road, Suite 106
Glen Burnie, MD 21061

Whiteford Taylor & Preston, LLP
111 Rockville Pike, Suite 800
Rockville, MD 20850


_____/s/ Brett Weiss_____
BRETT WEISS